Rockmore *v.* The State.

91b  97
93  124

As matter of law, an interval of three days is sufficient cooling time between the first fight and the homicide.  Where the interval is short and it is doubtful whether there has been sufficient time for "the voice of reason and humanity to be heard," it should be referred to the jury.  Each case is to be controlled by its own facts. 2 Bishop, Crim. Law, §711; 3 Greenleaf, Ev. §125; Hawkins, Pleas of Crown, p. 96, §22; State *v.* McCants, 1 Speers (S. C.), 384; State *v.* Sizemore, 7 Jones (N. C.), 206; Maher *v.* People, 10 Mich. 212; Regina *v.* Fisher, 8 C. & P. 182.

2. The evidence demanded the verdict, and the court did not err in denying a new trial.                           *Judgment affirmed.*

November 25, 1892.

Before Judge RICHARD H. CLARK. DeKalb superior court. August term, 1892.

Rockmore was found guilty of the murder of Jewett Smith, and sentenced to be hung. He moved for a new trial, and his motion was overruled. The motion contained the grounds that the verdict was contrary to law and evidence, and was decidedly and strongly against the weight of evidence, there being a reasonable doubt sufficient to change the form of the verdict; and that the court erred in charging: "In reference, gentlemen of the jury, to that former difficulty, all the effect it can have in the law is to throw light upon what transpired at the time the killing took place. What took place on the Friday night previously can be no justification in the law for what took place on the next Monday evening, because there was sufficient time for both or either of the parties to have cooled their anger, and to have permitted reason to have resumed its sway." The evidence as to this previous difficulty was, in substance: The killing occurred on Monday evening. The Friday night before there had been some dispute between the prisoner and deceased about the opening of a door on a car, they being railroad hands. Deceased was lying down on that Friday night and insisted that defendant should not open the door, because it was too cold and he did not want the air to blow on him. Defendant wanted to open the door to let the smoke out. Deceased told him to open the window and shut the door; defendant did not do it, and deceased got up with a wrench in his hand and struck defendant with it, and they had a little fight. They spoke to each other the next day, one asking the other for a shovel. None of the State's witnesses saw any renewal of that difficulty until the time of the killing, and there was no evidence of any threats made by deceased against defendant. According

to their testimony the killing was an unprovoked murder; defendant came upon deceased from behind and struck him in the back of the head with an iron bar, fracturing the skull.

No evidence was introduced by the defendant, but he made a statement in which he said, that on the Friday night before, deceased had grabbed him in the collar and struck him with a wrench; that he had a wrench but did not hit deceased with it, and, after deceased struck him, dropped the wrench and they scuffled on out through the hall, and deceased " beat him up powerful" and had his (defendant's) thumb in deceased's mouth and bit defendant, and when defendant " found himself," deceased had got off of him and left him, and he was bleeding; that on the next Monday when he came through the car where the killing occurred, deceased said he was going to kill " the d——n son of a bitch " and drew out a knife, and he knew deceased was not mad with anybody but him, and the piece of· iron was lying in the hall; that defendant was not studying about any fuss; that deceased came rushing towards him and had a knife open, and when he got about right on defendant, defendant knew he was after him and grabbed the piece of iron up and struck him with it, etc.

T. J. Ripley and J. B. Steward, for plaintiff in error.

J. M. Terrell, attorney-general, and J. S. Candler, solicitor-general, contra.